IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-02274-RM-SKC

LIFELINK FOUNDATION, INC.,

    Plaintiff,

v.

LIFELINK.COM, INC.,

    Defendant.

---

# ORDER

---

This trademark infringement action is before the Court on Plaintiff's Motion for Preliminary Injunction (ECF No. 2), which has been fully briefed (ECF Nos. 22, 30) and is ripe for review. The Court denies the motion for the reasons below.

## I. LEGAL STANDARD

To obtain injunctive relief, the plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted). Because a preliminary injunction is an extraordinary remedy, the plaintiff's right to relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258

(10th Cir. 2005). The fundamental purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held. *Id.*

## II.  BACKGROUND

Plaintiff and Defendant are both healthcare-related business, but they do not compete with one another directly. Plaintiff "is dedicated to the procurement of organs within hospitals through its organ procurement programs and to the recovery and supply of organs and tissues for transplantation therapies throughout the United States and internationally." (ECF No. 2 at 8.) Plaintiff has used its "LIFELINK" trademarks in connection with its business for more than thirty years. It has adopted common law marks and acquired several federal trademark/service mark registrations—the earliest in 2001. Defendant was founded in 2015 and "offer[s] an interactive technology platform that designs and provides its customers with powerful chatbot technology and tools to transform patient engagement at scale for healthcare providers, pharmaceutical companies, and researchers." (ECF No. 22 at 3.) It began using "LIFELINK" marks in 2015 that, for present purposes, the Court finds are nearly identical to Plaintiff's marks.[1]

In July 2019, Plaintiff learned about Defendant's use of the marks. (ECF No. 2 at 10.) Plaintiff sent Defendant a cease-and-desist letter the following month, but Defendant refused to stop using the marks. Other attempts to resolve this matter out of court were unsuccessful, and Plaintiff filed this action along with its motion for a preliminary injunction in July 2020. Plaintiff asserts nine interrelated claims for relief stemming from Defendant's use of the marks.

---

[1] "[T]he findings of fact and conclusions of law made by a court in deciding a preliminary injunction motion are not binding at the trial on the merits." *Nilson v. JPMorgan Chase Bank, N.A.*, 690 F. Supp. 2d 1231, 1238 (D. Utah 2009).

(ECF No. 40.)  In its motion, Plaintiff seeks "a preliminary injunction during the pendency of this litigation enjoining [Defendant] from using the name 'LIFELINK' or any other business or trade name that includes 'LIFELINK' or any variation thereof in any manner whatsoever pertaining to its healthcare-related goods and/or services, including on its website, social media, and any other print or media."  (ECF No. 2 at 26.)

### III. ANALYSIS

In support of its contention that it will suffer irreparable harm if an injunction is not issued, Plaintiff argues that Defendant's use of the marks (1) creates a high probability of confusion, which causes harm to Plaintiff's goodwill and (2) causes a loss of control over its business reputation.  The first contention assumes that Defendant will benefit from initial interest confusion because consumers will associate it with Plaintiff's reputation.  The second assumes that Plaintiff will be harmed because it will be associated with Defendant in the minds of consumers and a lot of people do not like chatbots.  Plaintiffs argue this will lead to lost business opportunities because negative impressions of Defendant will make potential organ and tissue donors disinclined to work with Plaintiff.

Plaintiff's speculative and conclusory arguments do not show irreparable injury. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 (10th Cir. 1991) ("[Plaintiff] offers only generalities and business speculation to establish its irreparable injury, and its evidence falls far short of the proof that is required to make a clear showing of irreparable injury.").  To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).  Plaintiff has not shown that confusion is likely to occur despite the vast differences between the parties' businesses.

Moreover, Defendant asserts that the confusion Plaintiff fears is even more unlikely given that Defendant is focused on business-to-business marketing and does not engage in any consumer marketing. Defendant also asserts that end users of its chatbots do not encounter its branding—they encounter the branding of Defendant's customers. Plaintiff does not meaningfully address these assertions or present any evidence of actual confusion by the consuming public or any healthcare entity. On the current record, the Court finds Plaintiff has fallen well short of showing it has a clear and unequivocal right to relief.

Because Plaintiff has not established irreparable harm, the Court need not analyze the remaining injunction factors. *See First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) ("[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." (quotation omitted)). In an abundance of caution, the Court further determines that Plaintiff has failed to establish that the threatened injury it speculates might possibly ensue outweighs the harm that is almost certain to occur if the Court entered an injunction. Defendant has adduced evidence that it would incur significant damages if it were ordered to stop using the name "LifeLink" in its business, as it has gained market brand equity and industry recognition using the marks. (*See* ECF No. 22 at 19.) On the other hand, as discussed above, Plaintiff has not adduced any evidence of actual confusion and its argument that confusion is likely to occur is conclusory and speculative. Plaintiff's argument that Defendant brought upon itself any harm that an injunction would cause by failing to conduct a search for similar marks before using its marks is unavailing. There is no evidence that Defendant was aware of Plaintiff's marks when it began its business, and Plaintiff

cites no binding authority for the proposition that such a search was required under the circumstances of this case.

## IV. CONCLUSION

Therefore, the Court DENIES Plaintiff's Motion for Preliminary Injunction (ECF No. 2).

DATED this 2nd day of November, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge